No. 13,121.

## THE SECOND NATIONAL BANK OF RICHMOND *v.* TOWNSEND, ASSIGNEE.

VOLUNTARY ASSIGNMENT.—*Judgment.—Promissory Note.—Merger.*—Where a creditor, after the voluntary assignment of his debtor, obtains judgment upon notes held by him at the time of the assignment, the judgment merges the notes as a cause of action, and changes the evidence of the debt, but the incidental right to share in the trust funds in the hands of the assignee is not merged, and the creditor may subsequently file and prove his claim.   *Bowen* v. *Eichel*, 91 Ind. 22, distinguished.

From the Wayne Circuit Court.

*J. F. Kibbey, W. A. Bickle* and *J. H. Kibbey,* for appellant.
*C. H. Burchenal* and *J. L. Rupe,* for appellee.

ELLIOTT, J.—Joseph W. Moore assigned all of his property for the benefit of his creditors. The assignment was made under the statute regulating voluntary assignments, and the deed was duly recorded. At the time the deed was executed and recorded, the appellant held two notes executed by Moore, and subsequently obtained judgment upon them. After judgment was recovered, the appellant filed a complaint against the assignee asking an allowance of the claim evidenced by the judgment, and on the trial offered in evidence a transcript of the judgment, but it was excluded, as were the notes on which the judgment was founded.

The appellee's counsel, in a very able and ingenious brief, defend the ruling of the trial court upon the ground that the judgment merged the debt and created a new one not in existence when the deed of assignment was executed and recorded. In support of their theory, counsel refer to the case of *Bowen* v. *Eichel*, 91 Ind. 22 (46 Am. R. 574), and the cases there collected. That case decides, that a defendant against whom an action is pending can not avail himself of a discharge in a bankruptcy, unless he pleads it in the action

prosecuted against him. The decision in the case cited is supported by the decisions of the Supreme Court of the United States, and is, as we believe, a correct declaration of the law. *Dimock* v. *Revere Copper Co.*, 117 U. S. 559, and cases cited.

While we adhere with confidence to the decision in *Bowen* v. *Eichel, supra,* we can not apply the doctrine it asserts to such a case as that now before us. In that case the question was, whether a defendant, who had suffered a judgment to be rendered against him, could subsequently avail himself of a defence that he might successfully have made to a pending action; while here the question is, does the creditor, by taking judgment on his claim, lose the right to participate in the benefit of a fund created by the assignment of the debtor? It is obvious that there is a wide and plain difference between the two cases. Here, the question is not between the creditor and debtor, nor is it as to the right of the debtor to defend against the judgment, for the only question here is as to the right of the creditor to share in the distribution of the trust funds in the hands of his debtor's assignee. We have no doubt that the judgment merged the notes as a cause of action; this is decided in *Gould* v. *Hayden,* 63 Ind. 443, and that case has been often approved. But the merger of a claim as a cause of action does not deprive the creditor of his right to resort to a fund held by a trustee, or to make available a security held for the debt. Thus, for example, a judgment will merge the mortgage as a cause of action, but will not destroy the lien. *Muncie Nat'l Bank* v. *Brown,* 112 Ind. 474; *Curtis* v. *Gooding,* 99 Ind. 45; *Pence* v. *Armstrong,* 95 Ind. 191; *Manns* v. *Brookville Nat'l Bank,* 73 Ind. 243; *Evansville Gas-Light Co.* v. *State, ex rel.,* 73 Ind. 219 (38 Am. R. 129); *Teal* v. *Hinchman,* 69 Ind. 379.

Property fraudulently conveyed may be subjected to the creditor's claim and the grantee charged as a trustee, although the original debt is transformed into a judgment and the

judgment is rendered after the conveyance. *Stout* v. *Stout,* 77 Ind. 537; Bump Fraudulent Conveyances, 498.

These familiar illustrations prove that, while a judgment so merges the claim as a cause of action that a second action can not be maintained upon it, and so concludes the defendant that he can not interpose a defence existing against the original claim, still, the judgment does not so change the debt as to deprive the creditor of the collateral rights conferred upon him by the original debt. But there are authorities more directly in point.

In *Rawley* v. *Hooker,* 21 Ind. 144, it was held that a judgment did not so merge the contract as to prevent a reference to it for the purpose of determining the rights of the parties under it. In that case WORDEN, J., said: " To be sure, the notes were merged in the judgment, but it does not seem to us to follow necessarily that the parties could not go behind it in order to determine their rights in relation to the mode of collection as to appraisement."

The question here presented was discussed in *Donald* v. *Kell,* 111 Ind. 1, and it was said: " It has long been the law that, wherever justice requires it, a judgment will be adjudged to be an old debt in a new form, and will not be regarded as creating a new debt." The same doctrine was declared in *Madison Tp.* v. *Dunkle, ante,* p. 262, and many cases were cited in its support.

Equity always refuses to permit a merger where it will work injustice. In this instance, this equitable principle should be applied. The act of the creditor in reducing his claim to judgment, neither prejudiced the rights of any other creditor nor interfered with the administration of the trust. The debt remains; the evidence is, it is true, changed into a new and higher form, but the appellant is still a creditor. We can not conceive any solid ground upon which it can be held that a creditor, by putting his claim in judgment, loses his right to share in the trust funds created by the debtor's assignment. If a creditor should file his claim one day and

take judgment the next, he certainly would not lose his right to participate in the distribution of the trust funds, and we can not perceive any just reason for holding that the fact that the claim is reduced to judgment before it is filed with the assignee, deprives him of that right. '

Equity looks through form to substance, and the substance to which it will here look is, that the appellant was a creditor when the assignment was made, and continued a creditor, although the form of the evidence of his debt was changed. Even if we should accept appellee's theory that there was a technical merger, it would be a sacrifice of substance to form to permit that merger to cut off the appellant's right to resort to the trust fund created for the benefit of creditors. But we do not accept that theory; on the contrary, we hold that, although the notes were merged as a cause of action, an incidental right, such as the right to share in the trust funds in the hands of the assignee, was not even technically merged in the judgment.    Incidental rights and equities of that nature were not litigated, and were not concluded by the judgment, and there can, therefore, be no merger.

Judgment reversed.

Filed May 15, 1888.